**UNITED STATES of America, Appellee,**

v.

**Andrzej DEREZINSKI, Appellant.**

**No. 90–5544.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1991.

Decided Sept. 3, 1991.

Rehearing and Rehearing En Banc Denied Oct. 28, 1991.

Charles L. Hawkins, Minneapolis, Minn., for appellant.

Michael W. Ward, argued (Jerome G. Arnold, Elizabeth L. De La Vega and Michael W. Ward, on the brief), Minneapolis, Minn., for appellee.

Before ARNOLD, and JOHN R. GIBSON, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Andrzej Derezinski appeals from his conviction for conspiring to defraud the United States by impeding, impairing, obstructing or defeating the functions of the Internal Revenue Service in the ascertainment, computation, assessment and collection of income taxes in violation of 18 U.S.C. § 371 (1988). He argues that the indictment

failed to state an offense under section 371 because it alleged a general conspiracy to defraud, when it should have pleaded a conspiracy to commit a specific offense. In the alternative, Derezinski argues that section 371 is unconstitutionally vague. He also argues that there was insufficient evidence to sustain his conviction and that he was denied a fair trial because the district court[1] refused to give requested jury instructions. We affirm the conviction.

Derezinski was a salesman of precious metals and rare coins for Northwest Territories, Inc. Between February and June 1986, Derezinski had considerable dealings with Peter Meile. Derezinski counseled Meile to structure cash transactions to avoid bank financial reporting requirements and prepared false business records to help Meile conceal his true identity.

The investigation of Derezinski's activities began when another Northwest Territories salesman contacted the IRS to report suspicious activity between Derezinski and Meile. The salesman suspected that Meile was a drug dealer and that Derezinski was helping Meile hide his illegal income through investments at Northwest Territories. According to the salesman, Meile was coming to the Northwest Territories office as much as three times a week, and was dealing almost exclusively with Derezinski. The salesman also reported that Jay Anderson, the Northwest Territories president, was sometimes present during and was fully aware of Derezinski's dealings with Meile.

IRS surveillance revealed that Meile followed a regular pattern of visiting Derezinski at the Northwest Territories office, going to a safety deposit vault at Midland Bank and then returning to his car. During these encounters Meile always dressed casually, wearing jeans, a sweater and a leather jacket that often appeared to contain bulky items.

IRS agents placed a pen register on Meile's home telephone line and learned that in May 1986, Meile called Derezinski approximately 24 times at either Northwest Territories or at Derezinski's home. During the surveillance period, agents observed that Meile always wore a beeper at his waist, although he did not appear to have a job. Agents often observed Meile meet individuals with cars on street corners and conduct what appeared to be drug transactions. Meile would get into the car with a bag or parcel, ride around the neighborhood for ten or fifteen minutes, and then be dropped off at the starting point, without the bag or parcel. At Derezinski's trial, Meile admitted he had been selling drugs for one and a half years, but claimed that he never told this to Derezinski.

Following up on the salesman's tip and Meile's suspicious activities, the Government sent an undercover agent to Northwest Territories to meet Jay Anderson. The agent used the name Bill Frazier, and pretended to be a financial consultant representing a wealthy elderly couple with a large amount of cash to invest.

Frazier told Anderson that his clients did not want anyone to be able to trace their purchases, and the two discussed the purchase of coins with cash. Anderson explained to Frazier that the IRS required banks and financial institutions to report large cash transactions, and that one way to avoid these reports was to go to various banks and purchase cashier's checks payable to fictitious names in amounts under $10,000. Anderson also told Frazier that Northwest Territories could further help such people avoid IRS detection by recording their transactions under the fictitious names on the checks. He explained that in the past Northwest Territories had recorded transactions under names like Rob Roy, Tom Collins, and Jack Daniels. According to Anderson, the primary benefit of this false recording was that it allowed investors to pass coins and gold to their children without the IRS recognizing or taxing the transfer.

Frazier left Northwest Territories without making a purchase, but returned one

---

1. The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

week later with $25,000 in cash. Again Frazier stressed that his clients wanted to keep a low profile. Anderson assured Frazier that he could absolutely protect the identity of the elderly couple, telling Frazier about another client of Northwest Territories who was a dealer in controlled substances. Anderson boasted that Northwest Territories had helped this "dealer" invest $400,000 in cash, using six different aliases over a three month period, without anyone knowing the dealer's name.

On June 19, 1986, IRS special agents executed a search warrant at Northwest Territories. As part of the search, the agents interviewed Derezinski about his dealings with Meile. At first, Derezinski denied that there was any record of the transactions between Northwest Territories and Meile, explaining that Meile had insisted that Northwest Territories not keep any such records. Gradually Derezinski produced some transaction slips and admitted that he had used fictitious names to record several of Meile's transactions.

As the questioning continued, Derezinski located twenty-four invoices representing sales to Meile. The invoices were made out to twenty-three different fictitious names, including Jim Beam, Tom Thumb, Michael Jordan, Dick Nixon, Gerald Ford, George Washington, and Ben Franklin. Derezinski told the agents that the value of all Meile transactions totaled approximately $50,000 to $100,000. He also told the agents that Meile made his purchases with checks, cashier's checks and cash, and that when Meile used cash, the bills were of various denominations, were usually rubber banded together in a stack, and that Meile carried the money in a brown paper bag.

After three hours of questioning, and after repeatedly denying there was any complete record of the Meile transactions, Derezinski finally produced a sheet of pa-per with "Bill Johnson" at the top, that he admitted was a record of the various trades Meile had conducted at Northwest Territories. The record sheet indicated a total of 60 trades under 56 different names. At that time Derezinski modified his previous statement to indicate that the total value of all Meile trades was about $300,000.[2]

At Derezinski's trial Meile testified that he recognized the 60 trade sheets or invoices that the agents had located using the "Bill Johnson" record sheet, that he had stressed to Derezinski that he did not want his trades to be detected by anyone, particularly the United States Government, and that he had invested additional money based on Derezinski's assurances of secrecy. Meile also testified that whenever he brought in large amounts of cash, Derezinski divided the transaction into several trade orders, each for amounts under $10,000 to avoid IRS cash reporting requirements.

A jury convicted Derezinski of violating section 371, and this appeal followed.

## I.

### A.

■ Derezinski first claims that his indictment was defective because it charged a general section 371 conspiracy to defraud rather than a conspiracy to commit a specific offense. 18 U.S.C. § 371 prohibits two distinct types of conspiracies: conspiracies to commit a specific offense against the United States and conspiracies to defraud the United States.[3] *United States v. Bilzerian*, 926 F.2d 1285, 1301 (2nd Cir. 1991); *see Dennis v. United States*, 384 U.S. 855, 860–61, 86 S.Ct. 1840, 1843–44, 16 L.Ed.2d 973 (1966). The Government prosecuted Derezinski under the general conspiracy to defraud clause of section 371,

---

**2.** In fact, the record indicates that the total value of Meile's purchases at Northwest Territories was $360,000, and Meile paid at least $240,000 of that in cash.

**3.** Section 371 states:
If two or more persons conspire either to commit any offense against the United States,

or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

charging him with what has become known as a *"Klein* conspiracy."[4]

Derezinski claims that the indictment was defective because it charged him under the general defraud clause of section 371 when the Government was actually trying to prosecute him for conspiring to commit two specific offenses—concealing assets, 26 U.S.C. 7206 (1988), and circumventing the financial reporting requirements of financial institutions, 31 U.S.C. §§ 5312, 5321 (1988). The present versions of sections 7206, 5312 and 5321 were each enacted after *United States v. Klein,* and Derezinski argues that because of the enactment of these specific statutes, it is no longer appropriate for the Government to prosecute conspiracies to commit acts governed by those statutes under the general defraud clause.

Derezinski's argument relies heavily on *United States v. Minarik,* 875 F.2d 1186, 1193–95 (6th Cir.1989), which can be distinguished from this case on its facts. In *Minarik,* the Sixth Circuit held that the bill of particulars alleged and the facts proved at trial would only support a finding of conspiracy under the specific offense clause. *Minarik,* 875 F.2d at 1187, 1196. The Sixth Circuit closely limited its finding to the specific facts of the case, *see id.* at 1195–96; *United States v. Alexander,* 943 F.2d 825 (8th Cir.1991), and placed great emphasis on the fact that the Government drastically changed its theory of prosecution as the case progressed. *Minarik,* 875 F.2d at 1189, 1196. As the Seventh Circuit said of *Minarik,* "the holding of that case is only that the prosecution's theory changed so often that the defendant lacked notice of the charge against which to defend." *United States v. Reynolds,* 919 F.2d 435, 439 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1402, 113 L.Ed.2d 457 (1991). *See also Bilzerian,* 926 F.2d at 1301 (rejecting an argument identical to the one made by Derezinski).

■ Derezinski's arguments attempt to draw our attention away from the true issue in this case. His claim, that the Government is really charging him with conspiring to violate 26 U.S.C. § 7206, relating to concealing assets, and 31 U.S.C. §§ 5312, 5321, relating to financial reporting requirements, is simply not true. the Government has steadfastly persisted in proving that Derezinski participated in a *Klein* conspiracy to defraud the United States. While it may be true that the Government could have also charged Derezinski under the specific offense clause of section 371, it is well settled that when conduct violates more than one criminal statute, the Government may choose which statute it will apply. *United States v. Batchelder,* 442 U.S. 114, 124–25, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979). The Government was within its discretion when it decided to prosecute Derezinski under the general defraud clause of section 371.

B.

■ Derezinski argues in the alternative that this court should strike down the general conspiracy to defraud provision of section 371 because it is unconstitutionally vague. The doctrine whereby statutes are found void for vagueness developed in part to ensure that poorly drafted or overly vague statutes are not used to ensnare the innocent. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). We will uphold the district court's application of section 371 unless we conclude that the statute lacks "sufficient definiteness that ordinary people can understand what conduct is prohibited," *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), or that it "encourage[s] arbitrary and discriminatory enforcement." *Id. See Fields v. City of Omaha,* 810 F.2d 830, 833 (8th Cir.1987). The Supreme Court has instructed that "vagueness challenges to

---

**4.** A *Klein* conspiracy is a conspiracy to defraud the United States in the function of assessing and collecting taxes by concealing business activities and the source and nature of income. *United States v. Klein,* 124 F.Supp. 476, 480 (S.D.N.Y.1954), *aff'd,* 247 F.2d 908 (2d Cir.1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). As in the present case, the defendant in *Klein* was also prosecuted under the general defraud clause of section 371.

statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

The conspiracy to defraud clause of section 371 prohibits conspiracies to defraud the United States, and the Supreme Court has defined defrauding the United States as "'impairing, obstructing, or defeating the lawful function of any department of the Government.'" *Dennis*, 384 U.S. at 861, 86 S.Ct. at 1844 (quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910)). The evidence in this case overwhelmingly demonstrates that Derezinski knowingly participated in conduct that would defraud the United States.

At trial, the Government presented evidence that Derezinski and Anderson had a regular policy of teaching and helping their clients to hide taxable income from the IRS. There was ample testimony from which a jury could conclude that Derezinski tried to prevent the IRS from discovering Meile's illegal income. Over a period of three months, Derezinski filled out more than 60 different trade sheets in 56 different fictitious names. Derezinski intentionally divided large cash transactions into several smaller ones to help Meile avoid detection through bank currency reports. When questioned by the IRS, Derezinski repeatedly denied the existence of any record of these transactions. Only after three hours of prying by IRS special agents did Derezinski finally produce the record sheet listing all of Meile's transactions. The evidence does not suggest that Derezinski was an innocent party, or that he lacked adequate notice that his actions or the actions of his co-conspirators were illegal.

Under the test in *Kolender*, we conclude that an ordinary person would have no difficulty understanding that Derezinski attempted to impair, obstruct and defeat the Treasury Department in its lawful function of collecting income taxes, or that such activity is illegal under section 371. The

general defraud clause of section 371 is not void for vagueness.

## II.

■ Derezinski's next argument is that the Government did not introduce sufficient evidence to establish that Derezinski's actions were part of a conspiracy to defraud the United States. This court must affirm Derezinski's conviction "if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. In making this determination, we must give the government the benefit of all inferences that may reasonably be drawn from the evidence." *United States v. Meyer*, 906 F.2d 1247, 1252 (8th Cir.1990) (citation omitted); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We do not lightly overturn a jury's finding of guilt.

Derezinski's sufficiency of the evidence argument focuses primarily on the charge that he helped Meile and others avoid currency reporting requirements. Derezinski argues that he cannot be guilty of a conspiracy to defraud the Government by helping Meile avoid reporting cash transactions, because at the time of the alleged conspiracy, neither Meile nor Northwest Territories was under a duty to report cash transactions in excess of $10,000.

This argument is misdirected to the question of who is required to make currency transaction reports. The Government did not prosecute Derezinski for failing to report large cash transactions, and it openly concedes that neither Northwest Territories nor Meile was under any such obligation during the period of the alleged conspiracy. Instead, the Government prosecuted Derezinski for conspiring to defraud the United States by falsifying business records and by restructuring large cash transactions to prevent them from becoming the subject of bank currency transaction reports. The fact that neither Meile nor Northwest Territories was required to file currency transaction reports is of no consequence to the government's ability to prove the conspiracy to defraud.

Likewise, Derezinski's claim that the Government did not introduce sufficient evidence to support the jury's verdict is without merit. The Government showed that Derezinski falsified transaction records to help a drug dealer hide the fruit of his illegal activity. Even when confronted by IRS special agents, Derezinski persisted in his effort to prevent the Government from identifying which Northwest Territories transactions had been with Meile. Derezinski's activities with Meile were aimed at interfering with the United States Treasury Department in its lawful function of collecting income tax. There was ample evidence upon which the jury could have convicted Derezinski of conspiring to defraud the United States.

### III.

Derezinski's final claim is that the district court erred by not giving requested instructions 19 through 27.

### A.

 Derezinski argues that under *Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 610–11, 112 L.Ed.2d 617 (1991), his conviction cannot stand because the Government did not show that he had a duty of disclosure to the IRS or that he intentionally violated that duty. Derezinski requested instructions 20–26 to show the jury that the law did not impose a reporting obligation on Derezinski, Meile or Northwest Territories.[5]

In *Cheek*, the Court explained that when "willfulness" is an express element in a criminal tax statute the Government bears the burden of showing that "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* 111 S.Ct. at 610. *Cheek* does

not apply to this case because the Government prosecuted Derezinski under a general conspiracy statute, not a criminal tax statute, and because "willfulness" is not an express element of section 371.

District courts have wide discretion when determining appropriate jury instructions, *Federal Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, 786 F.2d 817, 820 (8th Cir.1986), and the district court was well within its discretion when it rejected requested instructions 20–26. As we stressed earlier in this opinion, the Government did not charge Derezinski with violating the currency transaction reporting laws. For that reason, there was no need for the court to explain the reporting laws to the jury. *See United States v. Tarantino*, 846 F.2d 1384, 1403–04 (D.C.Cir.), *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988).

### B.

Requested instructions 19 and 27 each elaborated upon the general section 371 conspiracy charge. Having reviewed the transcript, we conclude that district court gave the jury a thorough instruction on the law of conspiracy. The court did not err in refusing to give requested instructions 19 and 27 because the instructions given, "when taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately present[ed] the issues in the case." *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1212 (8th Cir.1990). *See also Federal Enters.*, 786 F.2d at 820.

We affirm the conviction.

---

**5.** Requested instructions 20–26 set out the requirements under which banks and financial institutions must report currency transactions in excess of $10,000 to the IRS. *See* 31 C.F.R. § 103.26 (1990).