**UNITED STATES of America, Appellee,**

v.

**James MURPHY, Appellant.**

**No. 91–1515.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1991.

Decided Feb. 21, 1992.

Donald Wolff, St. Louis, Mo., for appellant.

David M. Rosen, St. Louis, Mo., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

James Murphy appeals his conviction of conspiring to defraud the United States, in violation of 18 U.S.C. § 371 (1988), for tipping off a gambling bookmaker about a federal investigation. Murphy claims the district court [1] erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his conviction. Specifically, he contends the government failed to prove: (1) that Murphy entered into an agreement; (2) that Murphy conspired to defraud the United States; and (3) that the United States was the entity defrauded. We affirm.

## I.

James Murphy first met bookmaker Michael Ketcher in 1971 when Murphy, then a St. Louis County police officer, booked Ketcher on a state gambling charge. Thereafter, Murphy and Ketcher developed a long-term friendship and Murphy took a position as an investigator for the St. Louis County Prosecuting Attorney's Office. Throughout their twenty year friendship, Ketcher ran a bookmaking operation. During that time he often requested and received information from Murphy regarding license plates and outstanding warrants. Although Murphy introduced evidence showing that investigators with the county prosecutor's office routinely gave out this type of information, Ketcher testified that he used this information to avoid detection of his bookmaking activities.

In October 1987, the St. Louis City Police began an investigation of Ketcher's bookmaking activities. A police informant helped identify Ketcher as a suspect and

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

provided police with the phone numbers he used to place bets. Unable to obtain a pen register themselves, the city police contacted the Federal Bureau of Investigation (FBI) in December 1987 for assistance. The FBI joined the investigation and lawfully installed the pen registers, which immediately indicated activity consistent with a bookmaking operation. In January 1988, before the football season ended, the phone activity suddenly decreased, suggesting that the bookmaking activity had stopped.

Because it appeared that the gambling operation had closed, the FBI decided in January 1988 to put the investigation on hold and resume the investigation next football season. In March 1988, the FBI and Internal Revenue Service (IRS) began using an informant to investigate Ketcher's gambling and drug activities. The FBI and IRS continued this investigation throughout the spring and summer of 1988—obtaining bank records, conducting surveillance, and developing background information—in preparation for the upcoming football season which would begin in August 1988.

By August, however, Ketcher had disappeared. The FBI abandoned its gambling investigation of Ketcher and decided to investigate the apparent information leak which allowed Ketcher to avoid further detection. A year later, in June 1989, the FBI arrested Ketcher in possession of eleven ounces of cocaine. Ketcher agreed to cooperate with authorities and to provide information concerning his drug source and his source of law enforcement information. Ketcher told police that Murphy had informed him, in July 1988, of an impending investigation into his gambling activities. He also agreed to record conversations with Murphy concerning the July 1988 incident.

These recordings, and Ketcher's testimony, indicate that Murphy discovered the investigation of Ketcher by overhearing a conversation while working in the prosecutor's office. Apparently, "some of the guys" were discussing the investigation in the county prosecutor's offices after learning of the investigation at a "cop party."

Murphy did not attend the party, but merely overheard a conversation concerning what had been discussed at the party. Murphy told Ketcher of this information in July 1988 and Ketcher immediately terminated his bookmaking activities.

Murphy was indicted on one count of conspiring to defraud the United States government. A jury convicted him after a three day trial. This appeal followed.

## II.

■ Murphy challenges the district court's denial of his motion for judgment of acquittal because the evidence was insufficient to support his conviction. In this context, we view the evidence in the light most favorable to the government, give the government the benefit of all reasonable inferences which may be logically drawn from the evidence, and overturn a jury verdict only if reasonable jurors must have doubted the existence of any of the essential elements of the crime. *See United States v. Campbell*, 848 F.2d 846, 850 (8th Cir.1988). To convict Murphy of conspiring to defraud the United States under 18 U.S.C. § 371, the government must show an agreement to defraud the federal government and an act by one or more of the conspirators to effect the object of the conspiracy. *Id.* at 851. Specifically, Murphy contends the government failed to establish: (1) an agreement; (2) a conspiracy to defraud; and (3) a defrauding of the United States.

### A. Agreement

■ Murphy first claims the government failed to show the existence of any agreement. Indeed, the government's key witness, Michael Ketcher, testified that he and Murphy did not have any agreement under which Murphy would seek out information and pass it on to Ketcher. We have often recognized, however, that the agreement need not be express, but rather can be an informal tacit understanding between the coconspirators. *See Campbell*, 848 F.2d at 851. Moreover, a conspiracy can be proved entirely by circumstantial evidence.

*See United States v. Maejia,* 928 F.2d 810, 812 (8th Cir.1991).

■ The government showed that Murphy often provided information to Ketcher over the course of their twenty year friendship. Using this information, Ketcher avoided detection of his bookmaking activities. Murphy, a law enforcement officer in a position of trust, knew of Ketcher's illegal activity. It is reasonable to infer that Murphy knew Ketcher would use this information to avoid detection, and that Murphy had agreed tacitly to provide the information for that purpose. A reasonable juror could find this evidence sufficient to establish an agreement between Murphy and Ketcher to defraud the United States.

Murphy relies on two conspiracy cases in which we found insufficient evidence of an agreement, *see United States v. Lewis,* 759 F.2d 1316 (8th Cir.) (although evidence was sufficient to establish a conspiracy, it was insufficient to establish this particular appellant's knowing participation), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985), and *United States v. Richmond,* 700 F.2d 1183 (8th Cir.1983) (although evidence showed some of the appellants were engaged in unlawful activity, the appellants' business and familial associations, *without more,* were insufficient to establish an agreement to enter conspiracy). These cases are distinguishable from the present case, however, because here the government established independent facts and circumstances showing an agreement. Most significantly, Murphy often provided information that helped Ketcher evade the authorities during their long friendship.

Murphy further argues that because he learned of the investigation of Ketcher by a mere fortuity or fluke, there can be no agreement to defraud. In particular, Murphy relies on the following language in *United States v. Fuel,* 583 F.2d 978, 982 (8th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979): "Initially, we note that it is difficult to understand how an agreement to defraud could exist that would only come into play at the happening of a fortuitous event—that is,

the occurrence of an automobile accident or a burglary." We find *Fuel* distinguishable from the present case. In *Fuel,* we found insufficient evidence of an agreement because "the government produced no statement or admission of the appellants which would indicate a common plan or agreement. Nor did the government establish facts and circumstances from which the existence of an agreement could be inferred." *Id.* at 981 (footnote omitted). We did not rely entirely on the "fortuity" aspect, as Murphy suggests. We, therefore, reject Murphy's argument that there was insufficient evidence of an agreement.

**B. Conspiracy to Defraud**

■ Murphy also claims that the evidence failed to show he conspired "to defraud the United States" as that phrase is used in 18 U.S.C. § 371. Section 371 proscribes two distinct types of conspiracies: conspiracies to commit a specific crime and conspiracies to defraud the United States. Murphy was charged with the second, more general, type of conspiracy. To establish a conspiracy to defraud, the government must show that Murphy conspired "to interfere with or obstruct one of [the United States'] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *See McNally v. United States,* 483 U.S. 350, 359 n. 8, 107 S.Ct. 2875, 2881 n. 8, 97 L.Ed.2d 292 (1987) (citing *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)); *see also Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966) (defining "defrauding" the United States in this context as "impairing, obstructing or defeating the lawful function of any department of Government.").

Murphy argues that he did not interfere with any government function by deceit, craft, or trickery; nor did he further any conspiracy by dishonest means. He merely tipped off Ketcher regarding a pending criminal investigation. According to Murphy, this act, and the fact that the FBI may have had its investigation thwarted as a result, is insufficient to establish a "de-

frauding" of the federal government. Murphy claims the evidence, at best, showed that his conduct *resulted* in the obstruction of an investigation. He claims the government failed to prove he entered into the conspiracy *intending* to defraud the government by deceit, trickery, or dishonesty.

In reviewing Murphy's claim, we are mindful that "indictments under the broad language of the general conspiracy statute [section 371] must be scrutinized carefully ... because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable." *Dennis*, 384 U.S. at 860, 86 S.Ct. at 1844. Even so, we cannot say the facts of this case are insufficient to establish a dishonest impairment of a government function. Conspiracies to defraud the United States under section 371 can take many forms. *See, e.g., Griffen v. United States*, —— U.S. ——, 112 S.Ct. 466, 468, 116 L.Ed.2d 371 (1991) (conspiracy to impair United States' efforts to ascertain income taxes and forfeitable assets); *United States v. Tuohey*, 867 F.2d 534, 538 (9th Cir.1989) (conspiracy to gain control of a bank in a manner that intentionally avoided federal reporting requirements); *Campbell*, 848 F.2d at 850–51 (conspiracy to obtain a loan and receive funds from the United States by submitting false documents and fictitious bills). In *United States v. Derezinski*, 945 F.2d 1006, 1011–12 (8th Cir.1991), we upheld a conviction under section 371 for conspiring to falsify records and restructure large cash transactions to avoid federal reporting requirements. We found that these activities were "aimed at interfering with the United States Treasury Department in its lawful function of collecting income tax." *Id.* at 1012.

Likewise, we find Murphy's conduct was aimed at interfering with the FBI's investigation of Ketcher. Murphy's intent to defraud can be inferred from both his longstanding tacit agreement with Ketcher and the nature of his employment. As a law enforcement officer at the time of the conspiracy, Murphy was in a unique position of trust and, therefore, was able to obtain, either directly or indirectly, sensitive information regarding criminal investigations. Murphy knew that Ketcher was a bookmaker who would likely use the information to avoid detection. Murphy's act of informing Ketcher about the investigation can be properly characterized as a "leak" of sensitive information. A reasonable juror could properly conclude that Murphy intended to dishonestly obstruct a lawful government function.

## C. Defrauding the United States

■ Finally, Murphy claims there was insufficient evidence to establish that the United States was the entity defrauded. Murphy argues that in July 1988, the city police were investigating Ketcher's gambling activities, not the FBI. If the FBI was investigating Ketcher at all in July 1988, Murphy claims it was for drug activity. Therefore, Murphy contends that his tipping off Ketcher regarding the gambling investigation could not have impaired a United States governmental function. We find ample evidence to support the jury's finding that the United States was the entity defrauded.

We first note that, according to Ketcher, Murphy told Ketcher about a city, county, and *federal* investigation. Second, Agent Robely of the FBI testified as to the FBI's actual involvement in the investigation of Ketcher. When the St. Louis City Police first requested the FBI's help in obtaining the pen registers, the FBI had the option of rejecting the request, lending the pen registers to the police without opening a file, or opening a file and beginning their own investigation along with the local police. The FBI, after evaluating the information supplied by the local police, determined that there was a potential violation of federal law and that Ketcher was a target worthy of an FBI investigation.

The FBI began its investigation in December 1987, temporarily suspended it from mid-January 1988 until March 1988, then resumed it until August of 1988 when Ketcher disappeared. This evidence was sufficient to establish the FBI's involvement in a gambling investigation of Ketch-

er in July 1988. Therefore, a reasonable juror could have found that in July 1988, Murphy impaired a government function of the United States.

We, therefore, affirm the judgment of the district court.