**UNITED STATES of America, Plaintiff,**

v.

**Ingmar HERNANDEZ, Defendant.**

**No. CR14–4088–8–MWB.**

United States District Court, N.D. Iowa, Western Division.

Signed March 4, 2015.

Forde Fairchild, Assistant U.S. Attorney, Sioux City, IA, for Plaintiff.

John P. Greer, Greer Law Office, Spencer, IA, for Defendant.

MEMORANDUM OPINION AND OR-
DER REGARDING MAGIS-
TRATE'S REPORT AND REC-
OMMENDATION CONCERNING

MOTION TO DISMISS

MARK W. BENNETT, District Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION AND BACKGROUND* ...................................817

II. *LEGAL ANALYSIS* ...............................................819
 A. *Standard Of Review* ................................................819
 B. *Objections To Report and Recommendation* ..........................822
 1. *Conspiring to defraud the United States* ........................822
 2. *Target of conspiracy* ...........................................826

III. *CONCLUSION* ..................................................826

## I. INTRODUCTION AND BACKGROUND

In a seventeen-count Indictment returned on November 20, 2014, defendant Ingmar Hernandez is charged with conspiring to obstruct justice, in violation of 18 U.S.C. § 371.[1] Specifically, the Indictment alleges, in pertinent part, that:

10. On April, 29, 2013, LEVON VARNE DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA–CONTRERAS, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ [sic], all learned federal authorities were searching for Jamal Dean before they completed their interaction with Jamal Dean on or about April 29, 2013.[2]

 . . . .

THE OBJECTS OF THE CONSPIRA-
CY

13. From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA–CONTRERAS, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNANDEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Fire-

1. In addition to conspiracy to obstruct justice, Hernandez's seven co-defendants are also charged with making false statements, in violation of 18 U.S.C. § 1001, concealing evidence, in violation of 18 U.S.C. § 1519, accessory after the fact to the possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 3, and misprision of a felony, in violation of 18 U.S.C. § 4.

2. Hernandez's last name is misspelled throughout the Indictment.

arms, and Explosives ("ATF")) by interfering with and obstructing the federal investigation into the events of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

*THE MANNER AND MEANS OF THE CONSPIRACY*

14. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

15. It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

16. It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

*OVERT ACTS*

17. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of Iowa and elsewhere:

**Before Arrest of Jamal Dean**

. . . .

H. On or about April 29, 2013, Jamal Dean used KIMBERLY SMITH'S and STEFFAN DEAN'S home phone to Call [sic] INGMAR HERNANDEZ and arranged for his (i.e., Jamal Dean's) transportation from KIMBERLY SMITH'S and STEFFAN DEAN'S home in Sioux City, Iowa to South Sioux City, Nebraska.

I. On or about April 29, 2013, MONICA ROCHA–CONTRERAS and INGMAR HERNADEZ picked-up Jamal Dean from KIMBERLY SMITH and STEFFAN DEAN'S home in a black 2003 Cadillac sedan.

J. On or about April 29, 2013, MONICA–ROCHA CONTRERAS and INGMAR HERNADEZ transported Jamal Dean from KIMBERLY SMITH'S and STEFFAN DEAN'S home to South Sioux City, Nebraska.

K. On or about April 29, 2013, MONICA ROCHA–CONTRERAS and INGMAR HERNADEZ transported Jamal Dean to a location near West 7th Street in South Sioux City, Nebraska.

L. On or about April 29, 2013, an unnamed conspirator known to the grand jury and Jamal Dean walked from a location near West 7th Street, South Sioux City, Nebraska to the home of an unnamed conspirator know to the grand jury near 5th Avenue in South Sioux City, Nebraska.

M. On or about April 30, 2013, one or more conspirators arranged for the transportation of Jamal Dean from the residence near 5th Avenue South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation in Winnebago, Nebraska.

N. On or about April 30, 2013, EVETTE MORRIS–HERNANDEZ and ESTEBAN HERNANDEZ picked-up Jamal Dean and INGMAR HERNANDEZ at the residence near 5th Avenue South Sioux City, Nebraska in a 1999 Dodge Durango sports utility vehicle.

O. On or about April 30, 2013, EVETTE MORRIS–HERNANDEZ and

ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P. On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNADEZ, and Jamal Dean into her home on the Winnebago Reservation in Winnebago, Nebraska.

Q. On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNADEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

Indictment at 4–9.

Hernandez has filed a motion to dismiss. In his motion, Hernandez argues that, even if the allegations in the Indictment are assumed to be true, the Indictment fails to state a § 371 violation against him because his alleged actions did not target or defraud the United States. The prosecution filed a timely resistance to Hernandez's motion. The prosecution contends that the factual allegations in the Indictment state a viable § 371 violation against Hernandez.

Hernandez's motion to dismiss was referred to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b). Judge Strand has filed a Report and Recommendation in which he recommends that Hernandez's motion to dismiss be denied. Judge Strand concluded that, accepting all of the allegations in the Indictment as true, the Indictment sufficiently describes a conspiracy that targeted the United States and of which Hernandez was a co-conspirator. Judge Strand also concluded that the Indictment's allegations against Hernandez sufficiently describe how he conspired to defraud the United States. Therefore, Judge Strand recommended that Hernandez's motion to dismiss be denied.

Hernandez has filed objections to Judge Strand's Report and Recommendation. The prosecution has filed a timely response to Hernandez's objections. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Hernandez's motion to dismiss.

## II. LEGAL ANALYSIS

### A. Standard Of Review

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R.CIV.P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte*

or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn,* 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas,* 474 U.S. at 150, 106 S.Ct. 466.

■■■ *De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao,* 540 U.S. 614, 620–19, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court " 'give[s] fresh consideration to those issues to which specific objection has been made.' " *United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (quoting H.R.Rep. No. 94–1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only

"those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas,* 474 U.S. at 154, 106 S.Ct. 466 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin,* 886 F.2d 1043, 1046 (8th Cir.1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity ... of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[ ]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir.1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk,* 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst,* 917 F.Supp. 1356, 1373 (N.D.Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo*

review to matters to which no objection at all has been made.

■ In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir.1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir.1990) (noting the advisory committee's note to FED.R.CIV.P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Thus, the clearly erro-

neous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir.2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. 525.

■ Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, 106 S.Ct. 466, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; see also FED.R.CIV.P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54, 106 S.Ct. 466. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[3]

---

3. The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion.

The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally ob-

As noted above, Hernandez has filed objections to Judge Strand's Report and Recommendation. I, therefore, undertake the necessary review of Judge Strand's recommended disposition of Hernandez's motion to dismiss.

### B. Objections To Report and Recommendation

#### 1. Conspiring to defraud the United States

Hernandez objects to Judge Strand's conclusion that the Indictment adequately alleges that he conspired to defraud the United States. He argues that the Indictment merely alleges that he was "going along for a ride" and, thus, it does not allege that he was defrauding the United States. The prosecution responds that the Indictment's allegations of active concealment and obstruction adequately plead a conspiracy to defraud under § 371.

"Indictments are normally sufficient unless no reasonable construction can be said to charge the offense." *United States v. Peterson*, 867 F.2d 1110, 1114 (8th Cir.1989). "In reviewing the sufficiency of an indictment, [the court] accept[s] the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Steffen*, 687 F.3d 1104, 1107 n. 2 (8th Cir.2012) (quoting *United States v. Farm & Home Sav. Ass'n*, 932 F.2d 1256, 1259 n. 3 (8th Cir.1991)). As the Eighth Circuit Court of Appeals has observed:

> "An indictment adequately states an offense if 'it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held

jected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir.2002) ("Ordinarily, we review a district court's factual findings for clear error.... Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir.1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, see *United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, see *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir.1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to

"review[ ] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir.1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal ' "when the questions involved are questions of law or mixed questions of law and fact." ' " (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir.1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir.1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n. 2 (8th Cir.2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.'"

*United States v. Mann,* 701 F.3d 274, 288 (8th Cir.2012) (quoting *United States v. Sewell,* 513 F.3d 820, 821 (8th Cir.2008) (quoting in turn *United States v. Hernandez,* 299 F.3d 984, 992 (8th Cir.2002))); *accord Steffen,* 687 F.3d at 1109; *see also United States v. Polychron,* 841 F.2d 833, 834 (8th Cir.1988) ("In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the facts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed."). "An indictment is normally sufficient if its language tracks the statutory language." *Sewell,* 513 F.3d at 821.

 "Section 371 proscribes two distinct types of conspiracies: conspiracies to commit a specific crime and conspiracies to defraud the United States." *United States v. Murphy,* 957 F.2d 550, 553 (8th Cir.1992); *see United States v. Rozin,* 664 F.3d 1052, 1065 (6th Cir.2012); *United States v. Alston,* 77 F.3d 713, 718 (3d Cir.1996); *United States v. Brandon,* 17 F.3d 409, 422 (1st Cir.1994); *United States v. Tham,* 960 F.2d 1391, 1399 (9th Cir. 1991); *United States v. Haga,* 821 F.2d 1036, 1039 (5th Cir.1987). Here, Hernandez is charged with the second, more general, type of conspiracy. To convict Hernandez of conspiring to defraud the United States under § 371, the prosecution must prove "an agreement to defraud the federal government and an act by one or more of the conspirators to effect the object of the conspiracy." *Murphy,* 957 F.2d at 552; *United States v. Campbell,* 848 F.2d 846, 851 (8th Cir.1988); *see also United States v. Caldwell,* 989 F.2d 1056, 1059 (9th Cir.1993). Conspiracy to defraud the

United States does not require proof of an agreement to violate a specific federal statute or regulation. *United States v. Gjerde,* 110 F.3d 595, 601 (8th Cir.1997). "Defrauding" under § 371 means obstructing the operation of any government agency by any "deceit, craft or trickery, or at least by means that are dishonest." *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924); *see Murphy,* 957 F.2d at 553. The prosecution need not have direct evidence of an explicit agreement. Instead, a "tacit understanding" among coconspirators may be inferred from circumstantial evidence. *See United States v. Rojas,* 356 F.3d 876, 879 (8th Cir.2004); *United States v. Nambo–Barajas,* 338 F.3d 956, 960–61 (8th Cir. 2003); *United States v. Pintar,* 630 F.2d 1270, 1275 (8th Cir.1980).

 Hernandez's initial objection appears to be based on his mistaken assumption that he must have personally committed an overt act in furtherance of the conspiracy to be convicted under § 371. The flaw in this assumption is that it is not necessary that Hernandez personally committed an overt act, if he was one of the conspirators when such an act was committed. It is well settled that, for the purposes of proving that a conspiracy exists, the overt acts of one co-conspirator may be imputed to all of the coconspirators. *See United States v. Mohamed,* 600 F.3d 1000, 1007 (8th Cir.2010) ("The requisite overt act is satisfied by a single overt act committed by one coconspirator") (citing *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940)); *see also United States v. Enstam,* 622 F.2d 857, 867 (5th Cir.1980) (only necessary for one coconspirator to commit overt act); *United States v. Veltre,* 591 F.2d 347, 350 (5th Cir.1979) (once conspiracy shown, proof of single overt act done in furtherance of conspiracy establishes the guilt of

each member). The United States Supreme Court has pointed out that "[t]he function of the overt act in a conspiracy prosecution is simply to manifest that the conspiracy is at work and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence." *Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) (internal quotation marks and citation omitted), overruled on other grounds by *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Since the reason for requiring proof of an overt act is to demonstrate that the conspiracy is operative, the overt act may be lawful or unlawful conduct. *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir.1979); *United States v. Miller*, 491 F.2d 638, 644 (5th Cir.1974).

The Indictment alleges that on April 29, 2013, Hernandez and all of the codefendants "learned federal authorities were searching for Jamal Dean." Indictment at 4. The Indictment goes on to allege that after learning this:

> From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA–CONTRERAS, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")) by interfering with and obstructing the federal investigation into the events of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

*THE MANNER AND MEANS OF THE CONSPIRACY*

> 14. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

> 15. It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

> 16. It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

Indictment at 3–5.

Thus, the Indictment sufficiently alleges that Hernandez entered into an agreement to defraud the United States by taking actions to prevent Jamal Dean's capture by federal authorities. The Indictment then goes on to outline numerous overt acts taken by the coconspirators in fur-

therance of the conspiracy, alleging in pertinent part that:

H. On or about April 29, 2013, Jamal Dean used KIMBERLY SMITH'S and STEFFAN DEAN'S home phone to Call [sic] INGMAR HERNANDEZ and arranged for his (i.e., Jamal Dean's) transportation from KIMBERLY SMITH'S and STEFFAN DEAN'S home in Sioux City, Iowa to South Sioux City, Nebraska.

I. On or about April 29, 2013, MONICA ROCHA–CONTRERAS and INGMAR HERNADEZ picked-up Jamal Dean from KIMBERLY SMITH and STEFFAN DEAN'S home in a black 2003 Cadillac sedan.

J. On or about April 29, 2013, MONICA–ROCHA CONTRERAS and INGMAR HERNADEZ transported Jamal Dean from KIMBERLY SMITH'S and STEFFAN DEAN'S home to South Sioux City, Nebraska.

K. On or about April 29, 2013, MONICA ROCHA–CONTRERAS and INGMAR HERNADEZ transported Jamal Dean to a location near West 7th Street in South Sioux City, Nebraska.

L. On or about April 29, 2013, an unnamed conspirator known to the grand jury and Jamal Dean walked from a location near West 7th Street, South Sioux City, Nebraska to the home of an unnamed conspirator know to the grand jury near 5th Avenue in South Sioux City, Nebraska.

M. On or about April 30, 2013, one or more conspirators arranged for the transportation of Jamal Dean from the residence near 5th Avenue South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation in Winnebago, Nebraska.

N. On or about April 30, 2013, EVETTE MORRIS–HERNANDEZ and ESTEBAN HERNANDEZ picked-up Jamal Dean and INGMAR HERNADEZ at the residence near 5th Avenue South Sioux City, Nebraska in a 1999 Dodge Durango sports utility vehicle.

O. On or about April 30, 2013, EVETTE MORRIS–HERNANDEZ and ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P. On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR. HERNADEZ, and Jamal Dean into her home on the Winnebago Reservation in Winnebago, Nebraska.

Q. On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNADEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

Indictment at 7–9.

■ These allegations, which I must accept as true, *see United States v. Steffen,* 687 F.3d 1104, 1107 n. 2 (8th Cir.2012), sufficiently identify multiple overt acts undertaken by the co-conspirators in furtherance of the conspiracy.[4] Accordingly, I have no difficulty in finding that the Indictment sufficiently describes a § 371

---

**4.** To the extent that Hernandez is arguing that he cannot be convicted on a § 371 charge because he was merely present, that argument is premature and is a jury question. " 'A [criminal] defendant is entitled to a theory of [the] defense instruction,' such as a " 'mere presence' " instruction, if the instruction " 'is timely requested, supported by the evidence, and correctly states the law.' " " *United States v. Cantrell,* 530 F.3d 684, 692 (8th Cir.2008) (quoting *United States v. Meads,* 479 F.3d 598, 601 (8th Cir.2007)).

conspiracy to defraud the United States and Hernandez's participation in that conspiracy. Thus, this objection is overruled.

### 2. *Target of conspiracy*

■ Hernandez also objects to Judge Strand's conclusion that the Indictment sufficiently alleges that the United States was the target of the conspiracy. He argues that, because Jamal Dean was initially sought on a state arrest warrant for shooting a local police officer, his actions could not have impaired a United States governmental function. This argument misstates the Indictment's allegations concerning the United States's involvement in the search for Jamal Dean. The ` Indictment alleges that, shortly after an armed robbery on April 15, 2013, Jamal was investigated by state and federal authorities for both state and federal criminal violations, including possession of a firearm and ammunition by a felon. Indictment at 3. The Indictment goes on to allege that this joint state and federal investigation was still underway on April 24, 2013, when Jamal committed a second armed robbery. *Id.* The Indictment next alleges that, after a state arrest warrant was issued for Jamal on April 24, 2013, both local and federal law enforcement officers began searching for him. *Id.* It is further alleged that a second state arrest warrant was issued for Jamal on April 29, 2013, after he shot a local police officer. *Id.* at 3–4. At this juncture, the United States Marshals Service is alleged to have joined the search for Dean. Significantly, the Indictment alleges that on this same date, Hernandez and his co-conspirators "learned federal authorities were searching for Jamal Dean." *Id.* After learning this, it is alleged that Hernandez was involved in transporting Jamal

on ·April 29 and 30, 2013, and participated in discussions about what actions Jamal should take in response to the investigation. Moreover, other conspirators are alleged to have taken specific overt actions to frustrate the federal investigation, including destroying evidence and lying to federal law enforcement officers. *Id.* at 10, 13. I find that these allegations are sufficient to state a claim that Hernandez was part of a conspiracy that targeted the United States within the meaning of § 371. Thus, this objection is also overruled.

### III. CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Strand's Report and Recommendation and deny defendant Hernandez's motion to dismiss.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION ON MOTION TO DISMISS*

LEONARD T. STRAND, United States Magistrate Judge.

Defendant Ingmar Hernandez (Hernandez) has filed a motion (Doc. No. 51) to dismiss Count 1 of the indictment as against him. Plaintiff (the Government) has filed a resistance (Doc. No. 87). The Honorable Mark W. Bennett, United States District Judge, has referred the motion to me for preparation of a report and recommended disposition. Because the motion has been well-briefed by both sides, I find that oral argument is not necessary and would cause undue delay. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.[1]

---

1. This motion is very similar to a motion (Doc. No. 29) previously filed by co-defendant Anna Baker. On December 29, 2014, I filed a Report and Recommendation (Doc. No. 52) in which I concluded that Baker's motion should be denied. The indictment's factual allegations against Hernandez differ in some respects from those against Baker.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 2014, the Grand Jury returned a seventeen-count indictment (Doc. No. 9) naming eight defendants. Hernandez is charged only with regard to Count 1, which alleges conspiracy to defraud the United States by obstructing or interfering with governmental functions in violation of 18 U.S.C. § 371 (Section 371). The indictment describes a series of events that allegedly took place after Jamal Dean (Dean) shot a Sioux City police officer on April 29, 2013. Basically, the indictment tells the story of Dean's flight and efforts to evade capture after the shooting. Each defendant is alleged to have known that Dean was a fugitive and, despite such alleged knowledge, to have played a part in assisting his escape while obstructing efforts to capture him. According to the indictment, an Iowa arrest warrant was issued for Dean shortly after the shooting and a variety of local, state and federal law enforcement authorities commenced a manhunt. Doc. No. 9 at 3. The federal authorities are alleged to have included Deputy United States Marshals and Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives. *Id.* The indictment states that Dean was apprehended in Texas on May 5, 2013, while accompanied by two of the other defendants. *Id.* at 4.

The indictment contains the following allegations that arguably relate to Hernandez:

10. On April, 29, 2013, LEVON VARNE DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA–CONTRERAS, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ [sic],[2] all learned federal authorities were searching for Jamal Dean before they completed their interaction with Jamal Dean on or about April 29, 2013.

\* \* \*

### THE OBJECTS OF THE CONSPIRACY

13. From on or about April 29, 2013, and continuing until about September 1, 2013, within the Northern District of Iowa and elsewhere, Jamal Dean and defendants, LEVON DEAN SR., (A/K/A LEE DEAN), STEFFAN DEAN, KIMBERLY SMITH, MONICA ROCHA–CONTRERAS, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, ANNA BAKER, and INGMAR HERNADEZ, and others known and unknown to the grand jury, knowingly and willfully conspired and agreed together and with each other, (and with other persons both known and unknown to the grand jury), to defraud the United States of and concerning its governmental functions and rights, hereafter described, that is: they conspired to interfere with and obstruct legitimate governmental activities of the United States Department of Justice (e.g., the United States Marshals Service ("USMS") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")) by interfering with and obstructing the federal investigation into the events of April 29, 2013, and the federal effort to assist in the apprehension of Jamal Dean, by deceit, craft, trickery, and by means that were dishonest.

### THE MANNER AND MEANS OF THE CONSPIRACY

14. It was a part of the conspiracy that the defendants would by deceit, craft, trickery and dishonest means, defraud

---

2. Hernandez's last name is spelled incorrectly throughout the indictment.

the United States by interfering with and obstructing the lawful governmental functions of the United States Department of Justice (e.g., the USMS and ATF) in that the defendants would receive, relieve, comfort, assist, and conceal Jamal Dean in his attempt to avoid capture and questioning.

15. It was further a part of the conspiracy that the defendants would make materially false, fictitious, and fraudulent statements or representations to the United States Department of Justice (e.g., the United States Marshals Service and the Bureau of Alcohol, Tobacco, Firearms, and Explosives).

16. It was still further a part of the conspiracy that the defendants would alter, destroy, mutilate, conceal, cover up, falsify, or make false entry in any record, document, or tangible object.

OVERT ACTS

17. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the Northern District of Iowa and elsewhere:

**Before Arrest of Jamal Dean**

\* \* \*

H. On or about April 29, 2013, Jamal Dean used KIMBERLY SMITH'S and STEFFAN DEAN'S home phone to Call [sic] INGMAR HERNANDEZ and arranged for his (i.e., Jamal Dean's) transportation from KIMBERLY SMITH'S and STEFFAN DEAN'S home in Sioux City, Iowa to South Sioux City, Nebraska.

I. On or about April 29, 2013, MONICA ROCHA–CONTRERAS and INGMAR HERNANDEZ picked-up Jamal Dean from KIMBERLY SMITH and STEFFAN DEAN'S home in a black 2003 Cadillac sedan.

J. On or about April 29, 2013, MONICA–ROCHA CONTRERAS and INGMAR HERNADEZ transported Jamal Dean from KIMBERLY SMITH'S and STEFFAN DEAN'S home to South Sioux City, Nebraska.

K. On or about April 29, 2013, MONICA ROCHA–CONTRERAS and INGMAR HERNADEZ transported Jamal Dean to a location near West 7th Street in South Sioux City, Nebraska.

L. On or about April 29, 2013, an unnamed conspirator known to the grand jury and Jamal Dean walked from a location near West 7th Street, South Sioux City, Nebraska to the home of an unnamed conspirator know to the grand jury near 5th Avenue in South Sioux City, Nebraska.

M. On or about April 30, 2013, one or more conspirators arranged for the transportation of Jamal Dean from the residence near 5th Avenue South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation in Winnebago, Nebraska.

N. On or about April 30, 2013, EVETTE MORRIS–HERNANDEZ and ESTEBAN HERNANDEZ picked-up Jamal Dean and INGMAR HERNADEZ at the residence near 5th Avenue South Sioux City, Nebraska in a 1999 Dodge Durango sports utility vehicle.

O. On or about April 30, 2013, EVETTE MORRIS–HERNANDEZ and ESTEBAN HERNANDEZ transported Jamal Dean from the residence near 5th Avenue, South Sioux City, Nebraska to ANNA BAKER'S home on the Winnebago Reservation, in Winnebago, Nebraska.

P. On or about April 30, 2013, ANNA BAKER welcomed EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNANDEZ, and Jamal Dean into her home on the Win-

nebago Reservation in Winnebago, Nebraska.

Q. On or about April 30, 2013, ANNA BAKER, EVETTE MORRIS–HERNANDEZ, ESTEBAN HERNANDEZ, INGMAR HERNADEZ, and Jamal Dean discussed the shooting and what JAMAL DEAN'S next step should be.

*Id.* at 4–9. Thus, the indictment alleges that Hernandez joined a conspiracy to obstruct the efforts of federal authorities to apprehend Dean and that he took the following actions in furtherance of the alleged conspiracy: (a) he was involved in transporting Dean to various locations while knowing he was a fugitive and (b) he took part in discussions with Dean and others about what Dean should do next.

## II. *HERNANDEZ'S MOTION*

Hernandez's motion invokes Federal Rules of Criminal Procedure 12(b)(2) and 12(b)(3)(B) which state, in relevant part:

**(b) Pretrial Motions.**

\* \* \*

**(2) Motions That May Be Made at Any Time.** A motion that the court lacks jurisdiction may be made at any time while the case is pending.

**(3) Motions That Must Be Made Before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:

\* \* \*

(B) a defect in the indictment or information, including:

\* \* \*

(v) failure to state an offense;

Fed.R.Crim.P. 12(b). While the motion makes reference to Rule 12(b)(2), *see* Doc. No. 51 at 1, Hernandez makes no argument that this court lacks jurisdiction. Instead, his arguments focus entirely on the question of whether the indictment's allegations state an offense against him. Doc. No. 51–1. In addressing Baker's motion, I noted that her jurisdictional argument under Rule 12(b)(2) merged with her Rule 12(b)(3)(B) arguments. Doc. No. 52 at 6. In other words, if the indictment states an offense, then this court has jurisdiction. The same situation exists here.

As for Rule 12(b)(3)(B), Hernandez argues that even if the allegations in the indictment are accepted as true, no violation of Section 371 occurred because his alleged actions did not target the United States, nor did they defraud the United States. He notes that certain allegations made against Baker are not made against him and argues that these distinctions are material. The Government disagrees. It argues that the allegations against Hernandez, while somewhat different from those against Baker, nonetheless set forth a viable claim that Hernandez violated Section 371.

## III. DISCUSSION

### A. *Does Count 1 State An Offense Against Hernandez?*

#### 1. *Applicable Standards*

An indictment is normally sufficient unless no reasonable construction can be said to charge the offense. *United States v. Nabors,* 45 F.3d 238, 240 (8th Cir.1995). This means an indictment will survive a motion to dismiss "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Carter,* 270 F.3d 731, 736 (8th Cir.2001). In reviewing the sufficiency of

an indictment, the court must accept the Government's allegations as true. *United States v. Steffen*, 687 F.3d 1104, 1107 n. 2 (8th Cir.2012).[3] The issue, then, is whether the indictment's allegations against Hernandez, when accepted as true, state a violation of Section 371.

### 2. Overview of Section 371

Section 371 reads as follows, in relevant part:

> **Conspiracy to commit offense or to defraud United States**
>
> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. The Government notes that Hernandez is charged under the second clause of Section 371, which makes it unlawful for "two or more persons [to] conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose" if at least one of those persons commits "any act to effect the object of the conspiracy." The Supreme Court has explained Section 371 as follows:

> Section 371 is the descendent of and bears a strong resemblance to conspiracy laws that have been in the federal statute books since 1867. *See* Act of Mar. 2, 1867, ch. 169, § 30, 14 Stat. 484 (prohibiting conspiracy to "defraud the United States in any manner whatever"). Neither the original 1867 provision nor its subsequent reincarnations were accompanied by any particularly illuminating legislative history. This

case has been preceded, however, by decisions of this Court interpreting the scope of the phrase "to defraud . . . in any manner or for any purpose." In those cases we have stated repeatedly that the fraud covered by the statute "reaches 'any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966), quoting *Haas v. Henkel*, 216 U.S. 462, 479, 30 S.Ct. 249, 253, 54 L.Ed. 569 (1910); *see also Glasser v. United States*, 315 U.S. 60, 66, 62 S.Ct. 457, 463, 86 L.Ed. 680 (1942); *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924). We do not reconsider that aspect of the scope of § 371 in this case. Therefore, *if petitioners' actions constituted a conspiracy to impair the functioning of the [Rural Electrification Administration], no other form of injury to the Federal Government need be established for the conspiracy to fall under § 371.*

*Tanner v. United States*, 483 U.S. 107, 128, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) [emphasis added]. Similarly, the Eighth Circuit Court of Appeals has stated that in order to establish a violation of the second clause of Section 371, "the government must show that [the defendant] conspired 'to interfere with or obstruct one of [the United States'] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.'" *United States v. Murphy*, 957 F.2d 550, 553 (8th Cir.1992) (quoting *McNally v. United States*, 483 U.S. 350, 359 n. 8, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)). The

---

**3.** As I noted in addressing Baker's motion, a Rule 12 motion may attack the sufficiency of the allegations but not the sufficiency of the

evidence. Doc. No. 52 at 7–8. Hernandez does not suggest otherwise.

agreement between the alleged conspirators "need not be express, but rather can be an informal tacit understanding" that "can be proved entirely by circumstantial evidence." *Id.* at 552.

As Hernandez points out, Section 371 applies only when the United States is the target of the conspiracy. *Tanner*, 483 U.S. at 130, 107 S.Ct. 2739 ("The conspiracies criminalized by § 371 are defined not only by the nature of the injury intended by the conspiracy, and the method used to effectuate the conspiracy, but also—and most importantly—by the *target* of the conspiracy.") [emphasis in original]. In *Tanner*, the defendants were convicted under Section 371 after conspiring to defraud a private entity—Seminole Electric Cooperative, Inc. (Seminole)—that received financial assistance from the federal government. *Id.* at 128–29, 107 S.Ct. 2739. Specifically, defendant Conover, who was employed by Seminole, caused the company to enter into road-construction contracts with a friend—defendant Tanner—that were favorable to Tanner. *Id.* at 111, 107 S.Ct. 2739. Conover received certain benefits from Tanner after arranging these favorable contracts. *Id.* at 111–12, 107 S.Ct. 2739. As it turns out, Seminole had funded the construction project with a loan guaranteed by the Rural Electrification Administration (REA), a federal agency. *Id.* at 111, 107 S.Ct. 2739.

Both defendants appealed their convictions on grounds that a conspiracy to defraud a private entity does not implicate Section 371, even if that entity happens to receive assistance from a federal agency. *Id.* at 129, 107 S.Ct. 2739. The Court agreed, rejecting the Government's argument that a private entity that is a "recipient of federal financial assistance and the

subject of federal supervision, may itself be treated as 'the United States' for purposes of § 371." *Id.* The Court concluded that the Government's position improperly "substituted 'anyone receiving federal financial assistance and supervision' for the phrase 'the United States or any agency thereof' in § 371." *Id.* at 132, 107 S.Ct. 2739. Thus, the convictions were vacated with regard to this theory.[4]

### 3. Analysis

Hernandez raises two arguments as to why the indictment's allegations against him do not fit the elements of an offense under Section 371: (1) the United States was not the target of the alleged conspiracy and (2) his alleged conduct did not "defraud" the United States. I will address these argument separately.

#### a. Was the United States the Target of the Alleged Conspiracy?

The indictment alleges that shortly after an armed robbery occurred on April 15, 2013, Dean was investigated by state and federal authorities for various offenses, including possession of a firearm and ammunition as a felon. Doc. No. 9 at 3, ¶¶ 4–5. The indictment further alleges that this joint state and federal investigation was still underway on April 24, 2013, when Dean committed a second armed robbery. *Id.*, ¶¶ 5–6. Next, the indictment alleges that a state court arrest warrant for Dean was issued on April 24, 2013, and that local and federal law enforcement officers began searching for him at that time. *Id.*, ¶ 6.

According to the indictment, a second state court arrest warrant for Dean was issued on April 29, 2013, after Dean shot a police officer. *Id.* at 3–4, ¶¶ 7–8. At that time, Deputy United States Marshals are

---

**4.** The Court remanded the case for further consideration of a second theory, which was that the defendants conspired to cause Semi-

nole to make false statements to the REA. *Id.* Under that theory, the United States was the target of the conspiracy. *Id.*

alleged to have joined the existing search for Dean, meaning officials from multiple federal agencies (in addition to state and local agencies) were attempting to locate Dean after the shooting. *Id.* at 4, ¶ 9. Moreover, and critically, the indictment alleges that on this same date—April 29, 2013—all of the defendants, including Hernandez, "learned federal authorities were searching for Jamal Dean." *Id.,* ¶ 10.

Thus, according to the indictment, when Hernandez allegedly took part in transporting Dean to various locations on April 29 and 30, 2013, and participated in discussions about the shooting and about what Dean should do next,[5] he knew Dean was wanted by federal authorities. Moreover, other alleged conspirators, possessing the same knowledge about federal involvement, are alleged to have taken other steps to frustrate the manhunt and investigation. *Id.* at 6–14, ¶ 17. Hernandez, however, correctly points out that Baker—unlike him—is also alleged to have (a) destroyed evidence and (b) lied to a federal agent. *Id.* at 10, 13, ¶¶ 17(CC), 17(DD) and 17(OO). The question is whether the lack of such allegations requires dismissal of the Section 371 charge against Hernandez. I find that it does not.

Accepting all allegations as true, the indictment sufficiently describes a conspiracy that targeted the United States and of which Hernandez was a co-conspirator. This situation is not akin to the rejected theory in *Tanner,* under which a conspiracy to defraud a private entity was alleged to fall within Section 371 because that entity received some assistance from the federal government. That theory would be analogous if the investigation and manhunt concerning Dean had been a state or local operation, with only some behind-the-scenes assistance from federal resources (such as the use of federal funds, databases, etc.).

Here, however, the indictment expressly alleges that Hernandez and the other defendants *knew* federal authorities were looking for Dean and that they took actions to frustrate this federal effort. The indictment thus describes an alleged conspiracy akin to the Section 371 theory that was approved in *Tanner* (in which the defendants caused Seminole to make false statements to a federal agency),[6] and it alleges that Hernandez took actions in furtherance of the conspiracy. I find that the indictment's allegations are sufficient to state a claim that Hernandez was part of an alleged conspiracy that targeted the United States within the meaning of Section 371. As such, I must recommend that Hernandez's motion be denied on this issue.

#### b. Did Hernandez's Alleged Actions "Defraud" the United States?

Hernandez next argues that his alleged conduct does not support a Section 371 charge because simply riding with and talking with a state fugitive does not amount to "defrauding" the United States. He states: "Defendant is not accused of lying to the agents or of destroying evidence. Simply put, 'being there' is not 'defrauding.'" Doc. No. 51–1 at 6. In resisting this argument, the Government relies on the Supreme Court's broad interpretation of the concept of "defrauding" for purposes of Section 371. Doc. No. 87–1 at 9–12. It notes, for example, that "defrauding" the United States simply means "impairing, obstructing, or defeating the lawful function of any department of government." *Id.* at 9 (citing *Dennis v. United States,* 384 U.S. 855, 861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966)).

---

5. See Doc. No. 9 at 8–9, ¶¶ 17(H)–17(Q).

6. *Tanner,* 483 U.S. at 132, 107 S.Ct. 2739.

The Government is correct that fraud under Section 371 goes beyond common law fraud. *Dennis,* 384 U.S. at 861, 86 S.Ct. 1840. It includes any effort to interfere with or obstruct one of the federal government's lawful functions "by deceit, craft or trickery, or at least by means that are dishonest." *Murphy,* 957 F.2d at 553. Thus, "[c]onspiracies to defraud the United States under section 371 can take many forms." *Id.* at 554. In *Murphy,* for example, the defendant was alleged to have .obtained sensitive information about an ongoing investigation and to have shared that information with a target of the investigation to help the target avoid detection. *Id.* The court found that under those facts, "[a] reasonable juror could properly conclude that Murphy intended to dishonestly obstruct a lawful government function." *Id.*

I agree with Hernandez that the allegations against him are less compelling than those against Baker. After all, in addition to allegedly harboring Dean in her home, Baker is alleged to have destroyed evidence and to have made a false statement to a federal agent. Nonetheless, and particularly in light of *Murphy,* I find that the indictment's allegations against Hernandez state a case that he conspired to defraud the United States. If those allegations are true, reasonable jurors could find that Hernandez, while knowing that federal agents were looking for Dean, interfered with that search by deceit, craft or trickery in the form of (a) participating in the movement of Dean to different locations to prevent his capture and (b) helping Dean plan further evasive actions. Thus, when read as a whole and reasonably construed, the indictment's allegations are sufficient to charge Hernandez with conspiracy to defraud the United States. I therefore recommend that his motion be denied on this ground, as well.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth herein, I RESPECTFULLY RECOMMEND that the motion (Doc. No. 51) by defendant Ingmar Hernandez to dismiss Count 1 of the indictment as to him be **denied.**

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Crim.P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed.R.Crim.P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n. 5 (8th Cir.2009).

**IT IS SO ORDERED.**

**DATED** this 21st day of January, 2015.